IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00756-REB-KLM

STEVEN R. WILSON

    Plaintiff,

v.

LT. RYAN BEZONA,
CMC ACC SGT. MATHIS, and
CMC ACC CO-1 WAGNER,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment** [Docket No. 50; Filed April 15, 2011] (the "Motion"). Plaintiff, who is proceeding *pro se*, filed a Response [Docket No. 57] in opposition to the Motion on May 5, 2011. Defendants filed a Reply [Docket No. 59] on May 18, 2011. Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1C, the Motion has been referred to this Court for a recommendation regarding disposition. The Court has reviewed the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#50] be **GRANTED**.

### I. Summary of the Case

Plaintiff is an inmate at the Colorado Department of Corrections ("CDOC") Arrowhead Correctional Center ("Arrowhead"). On August 6, 2010, Plaintiff filed an

Amended Complaint [Docket No. 18] in which he claims that Defendants violated the rights guaranteed to him by the First, Fifth, and Fourteenth Amendments to the United States Constitution by refusing to accept "legal mail" sent to him at Arrowhead from the United States Supreme Court, the United States Court of Appeals for Veterans Claims, the Board of Veterans Appeals, the Department of Veterans Affairs, and prospective counsel. Plaintiff also claims that Defendants violated his unspecified "constitutional rights" by refusing to provide him with "the address[es] of the attorneys who sought to contact him" by mail. *Amended Complaint* [#18] at 11. Plaintiff alleges that, during the relevant time period, Defendants Mathis and Wagner were "mailroom staff" at Arrowhead. *Amended Complaint* [#18] at 3. Plaintiff alleges that Defendant Bezona was in a supervisory position and was "made aware of" the decisions of Defendants Mathis and Wagner regarding the handling of mail received at Arrowhead. *Id.* at 7; *see also id.* at 9 ("Lt. Ryan Bezona was made aware of [the fact that Plaintiff's mail was being rejected], yet he did not do anything to correct this matter.").

Plaintiff alleges that the following "legal mail" intended for him was "rejected" by Defendants Mathis and Wagner:

(1) "at least three" letters sent from the Office of the Clerk of the Supreme Court of the United States over a "seven month period," *id.* at 3, 8;

(2) an April 13, 2009 letter from the Department of Veterans Affairs, *id.* at 5;

(3) "at least six" letters from attorneys "who practice before the [Court of Appeals for Veterans Claims] and [the Board of Veterans Appeals] [and] sought to assist [Plaintiff] with the claim process," *id.*; and

(4) "documents related to [Plaintiff's] claim for benefits" sent from the Court of Appeals for Veterans Claims and the Board of Veterans Appeals, *id.* at 9.

Plaintiff further alleges that he was never informed by Defendants that mail intended for him had been rejected. *See, e.g., id.* at 4 (alleging that Plaintiff "was not informed by [Arrowhead] mailroom staff Sgt. Mathis or CO-I Wagner that mail was rejected from the Supreme Court"); *id.* at 9 ("Even though Lt. Bezona knew that the mail was direct to me, he rejected it without informing me, or sending me [a] rejection notice that mail was rejected."); *id.* (asserting that Plaintiff has a "right to be informed when mail is rejected by the mailroom").

Plaintiff claims that the rejection of his legal mail harmed him by (1) effectively denying him his right to appeal a decision of the Court of Appeals for the Tenth Circuit to the Supreme Court, (2) causing him to miss the deadline for filing an appeal of a decision of the Board of Veterans Appeals with the Court of Appeals for Veterans Claims, and (3) preventing him from having the assistance of counsel when preparing his pleadings for proceedings before the Supreme Court, the Board of Veterans Appeals, and the Court of Appeals for Veterans Claims.

Defendants now seek summary judgment in their favor pursuant to Fed. R. Civ. P. 56 for the following reasons: (1) the inmate mail handling procedures followed by Defendants are constitutionally permissible; (2) Plaintiff has not shown that he suffered an actual injury as a result of the alleged rejection of his legal mail; (3) Plaintiff did not exhaust his administrative remedies before filing this case; and (4) Defendants are entitled to qualified immunity from liability.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to

assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are

not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Amended Complaint [#18] and Response [#57], the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III. Analysis

### A. Exhaustion of Administrative Remedies

Defendants contend that they are entitled to summary judgment in their favor because undisputed facts demonstrate that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this case. *Motion* [#50] at 15. The PLRA provides as follows:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner plaintiff is not required to specifically plead that he has exhausted his available administrative remedies or to attach exhibits proving exhaustion to his complaint.  *Jones*, 549 U.S. at 216.  The burden is therefore on defendants to raise failure to exhaust as an affirmative defense in a motion for summary judgment.  *Id.*  If the evidence produced by the parties shows that there are no genuine factual issues preventing a finding that the plaintiff did not properly exhaust his available administrative remedies, the complaint must be dismissed without prejudice.  *See Dawson v. Werholtz*, No. 07-3165, 2008 WL 1773866, at *1 n.1 (D. Kan. Apr. 16, 2008) (unreported decision) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (stating that dismissal of unexhausted claims on summary judgment should be without prejudice)).

Prison facilities are tasked with the responsibility of establishing administrative review procedures for addressing prisoner grievances.  To satisfy the PLRA exhaustion requirement, a prisoner plaintiff "must 'complete the administrative review process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself."  *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88); *see also id.* ("The level of detail necessary in a grievance to comply with the

grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." (citing *Booth v. Churner*, 532 U.S. 731, 740 (2001))). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to properly exhaust," *Jones*, 549 U.S. at 218, but compliance must be **complete**, i.e., the inmate must abide by **all** of the "agency's deadlines and other critical procedural rules," *Woodford*, 548 U.S. at 90-91. Complete compliance is required "because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* Accordingly, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan*, 304 F.3d at 1032 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

CDOC has adopted an administrative regulation, known as "AR 850-04" [Docket No. 50-7], that establishes a grievance process for inmates at CDOC facilities. *Motion* [#50] at 5. This process involves three steps. *AR 850-04* [#50-7]. At each step, an inmate must complete and submit a grievance form and then wait a period of time to receive a response from a CDOC official. *Id.* An inmate has not exhausted his administrative remedies until he has received a denial of his step three grievance form. *Id.* at 8, § (IV)(C)(1)(c)(4) ("Step 3 grievance responses shall be sent directly from the grievance officer to the offender. The decision of the grievance officer is the final agency action."). AR 850-04 sets out several procedural requirements for filing grievances. Among these is Section (IV)(B)(4)(a), which

provides as follows: "At each step [of the grievance process], the offender must attach a copy of all previous steps and responses. Grievances that are submitted without copies of former steps and responses shall be denied on procedural grounds. The offender in that case will not have exhausted his administrative remedies." *Id.* at 7.

In this case, it is undisputed that Plaintiff filed four grievance forms regarding the handling of mail at Arrowhead. First, Plaintiff filed a step one grievance on October 26, 2009. *Motion* [#50] at 16; *Legal Grievances Report for Steven R. Wilson* ("*Legal Grievances Report*") [Docket No. 50-9] at 2; *CDOC Offender Grievance Form* [#57] at 21. This grievance was designated No. AC 09/10-054, and it was denied on November 11, 2009. *Legal Grievances Report* [#50-9] at 2. Defendants assert that "Plaintiff did not pursue this grievance further" by proceeding to step two and step three of the grievance process. *Motion* [#50] at 16; *see Legal Grievances Report* [#50-9] at 2 (showing only a step one grievance disposition for No. AC 09/10-054). Plaintiff counters that he in fact did file a step two grievance form on November 18, 2009 to appeal the denial of his step one grievance designated No. AC 09/10-054. *See Response* [#57] at 13-14. Plaintiff asserts that his step two grievance form was incorrectly given a new designation, No. AC 09/10-067, and treated as a new step one grievance. *Id.* Both Plaintiff and Defendants have provided a copy of Plaintiff's purported step two grievance form. *CDOC Offender Grievance Form* [#57] at 22-23; *CDOC Offender Grievance Form* [Docket No. 50-10] at 7-8. After reviewing the form, the Court finds that Plaintiff clearly labeled it as a step two grievance. Nevertheless, the form was assigned a new grievance number, No. AC 09/10-067, and CDOC considered it as a step one grievance. *CDOC Offender Grievance Form* [#57] at 22-23; *CDOC Offender Grievance Form* [#50-10] at 7-8*; Legal Grievances Report*

[#50-9] at 2.

It is unclear from the evidence presented to the Court whether Plaintiff's November 18, 2009 grievance form should have been considered as a step two grievance instead of as a step one grievance. But regardless of whether CDOC erred in its designation of the November 18, 2009 form, it is undisputed that Plaintiff subsequently filed two additional grievance forms. *CDOC Offender Grievance Form* [#57] at 24-27 (December 18, 2009 grievance form labeled as step 2); *CDOC Offender Grievance Form* [#57] at 28-31 (December 18, 2009 grievance form labeled as step 3). Thus, even if Plaintiff's initial October 26 grievance form is ignored, Plaintiff still filed three consecutive grievance forms as part of the No. AC 09/10-067 series. These three forms were considered in turn, and CDOC provided Plaintiff with a written response to each.[1] Accordingly, the Court finds that

---

[1] Defendants contend that it was improper for Plaintiff to submit two grievance forms on the same day, December 18, 2009. *Motion* [#50] at 16 ("Plaintiff then submitted the same form for both step 2 and step 3 on December 18, 2009."); *id.* at 17 ("Here, Plaintiff attempted to take a short cut through the grievance process by submitting the same form, on the same day, as both a step 2 and a step 3 grievance. This is not permitted under [CDOC] policies."). Nevertheless, CDOC considered the forms separately and issued a separate response to each. First, on January 18, 2011, CDOC responded to the grievance form that Plaintiff labeled "step 2." *CDOC Offender Grievance Form* [#57] at 24 (stating as follows in response to the grievance: "Your DOC number was not on the envelope and complying with AR 0300-038 the mail room staff did refuse it. Your grievance at Step II has been denied."). Next, on February 11, 2011, CDOC Grievance Officer Anthony DeCesaro wrote Plaintiff a letter denying the grievance form that Plaintiff labeled "step 3." *Letter Re: Grievance No. AC 09/10-067* (the "*Letter*") [#50-10] at 2. Because CDOC sequentially considered both of the December 18, 2009 grievance forms – instead of considering only one form and refusing to accept the other – the Court rejects Defendants' contention that Plaintiff did not complete all three required steps of the grievance process. *See Response* [#57] at 12 ("The evidence . . . shows that there were three grievances filed on the same issue. Each grievance was answered in order by a higher [CDOC] official."). Moreover, even if the Court treats the two grievance forms filed on December 18, 2009 as just one step in the grievance process, this filing was the third consecutive time that Plaintiff submitted grievance paperwork about the mail room. Thus, under any interpretation of the facts, it is clear that Plaintiff waited to file this lawsuit until receiving three separate considerations of his complaints about the mail room. *See Adickes*, 398 U.S. at 157 (stating that the Court should cast the facts in the light most favorable to the plaintiff when resolving a motion for summary judgment).

Plaintiff completed each of the steps required to exhaust his administrative remedies.

Although Plaintiff completed each step of the grievance process, the Court finds that he failed to comply with AR 850-04 § (IV)(B)(4)(a) while doing so.  On February 11, 2010, CDOC Grievance Officer Anthony DeCesaro wrote Plaintiff a letter denying his December 18, 2009 grievance form that was labeled "step 3."  *See supra* n.1; *Letter* [#50-10] at 2. The letter states as follows:

> I have reviewed your Step 3 grievance that you filed with regard to [the] mail room.
>
> However, you did not enclose a copy of the Step 1 response for grievance # AC 09/10-067.
>
> It is the offender's responsibility to provide copies of all previous steps and responses.  Administrative Regulation 850-04 (IV)(B)(4)(a) requires that these procedures must be followed.  Without these prior steps, I have no way of determining what your initial complaint was and how staff responded to that complaint.
>
> Because of your failure to follow the grievance procedure, you have <u>not</u> exhausted your administrative remedies.  This is the final administrative action in this matter.
>
> Enclosed please find the following copies of all the materials you provided to me in support of the grievance that you filed: Step 2 Grievance and Step 3 Grievance.

*Id.*; *see also Affidavit of Anthony DeCesaro* [Docket No. 50-8] at 3, ¶ 5 ("I received Plaintiff's step 3 for Grievance number AC 09/10-067 on January 26, 2010.  Plaintiff did not include all of the prior steps in the grievance process with his step 3 grievance. Accordingly, I sent a letter to Plaintiff on February 11, 2010, advising him that he had failed to follow the grievance procedure and that he had not exhausted his administrative remedies.").

In his Response [#57], Plaintiff does not dispute that he failed to attach to his

-10-

December 18, 2009 "step 3" grievance form copies of all of his previously filed grievance forms and the responses thereto. Instead, Plaintiff merely states that each time he filed a grievance form, he "made references" on the form to all of his previously filed grievance forms. *Response* [#57] at 3, ¶ 7. Making reference to previously filed forms is plainly not the same as attaching copies of the previously filed forms. The decisions of the Supreme Court and the Court of Appeals for the Tenth Circuit have made it very clear that compliance with prison grievance procedures must be exact, even when such compliance is burdensome or procedurally complex. *See Jernigan*, 304 F.3d at 1032 (explaining that "substantial compliance" with administrate remedy procedures is inadequate and expressly rejecting the argument that "'inmates do not have to properly complete the grievance process, and they do not have to correct deficiencies'" (quoting an inmate plaintiff's brief)); *Booth*, 532 U.S. at 732 (holding that the PLRA does not require that administrative remedy procedures be "plain, speedy, and effective"); *Thomas v. Parker*, 609 F.3d 1114, 1119 (10th Cir. 2010) ("'Plaintiff's disagreement with prison officials as to the appropriateness of a particular procedure under the circumstances, of his belief that he should not have to correct a procedural deficiency does not excuse his obligation to comply with the available process.'" (quoting *Abdulhaseeb v. Calbone*, No. 05-cv-1211-W (W.D. Okla Feb. 12, 2008) (unreported decision) (report and recommendation adopted by the district court))). Moreover, it is not the Court's place to second guess the necessity or wisdom of administrative grievance procedures like CDOC's requirement that inmates attach copies of their prior grievance forms to each subsequent grievance form. *See Wright*, 260 F.3d at 358 (noting that the PLRA does not "enable judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems"); *see generally*

*Mower v. Swyhart*, 545 F.2d 103, 104 (10th Cir. 1976) ("Where [an] administrative remedy is clearly available, it would be totally inappropriate for [a] court to interfere in the internal administration of [a] prison." (citation omitted)).

The Court finds that Defendants have carried their initial burden of making a prima facie showing that Plaintiff failed to comply with AR 850-04 § (IV)(B)(4)(a) and thus failed to properly exhaust his administrative remedies. The Court further finds that Plaintiff has not produced any competent summary judgment evidence indicating that he did in fact comply with the prison's administrative regulation. As explained above, Plaintiff does not aver in his Response that he attached to his December 18, 2009 "step 3" grievance form copies of his prior grievance forms and the responses thereto. Moreover, even if Plaintiff had so averred, he did not swear under penalty of perjury to the accuracy of the factual assertions contained in the Response such that it could be treated by the Court as an affidavit. *See Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)). Accordingly, the Court concludes that Plaintiff has not put forth sufficient evidence such that a reasonable jury could find that he complied with AR 850-04 § (IV)(B)(4)(a). *See Anderson*, 277 U.S. at 248.

As a final matter, Plaintiff appears to argue that AR 850-04 § (IV)(B)(4)(a) effectively makes it impossible for him and other Arrowhead inmates to properly exhaust their administrative remedies because they are not afforded any way to make copies of their grievance forms. *See Response* [#57] at 4 ("[Arrowhead] grievances coordinators do not give offender[s] copies of the grievances once they have been filed."); *id.* at 13 (stating that "there are no duplicate copies" made of grievance forms). "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they

render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted); *see also Aquilar-Avellada v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (stating that district courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials" before dismissing a claim for failure to exhaust); *Tyler v. Jones*, No. 09-cv-02561-DME-KLM, 2010 WL 3843491, at *4 (D. Colo. July 19, 2010) (unreported decision) ("Despite the PLRA's strict requirements, there is a recognized exception to the requirement to exhaust when procedures are not available – e.g., when an inmate has been prevented from [properly] filing a grievance[.]" (citing *Jernigan*, 304 F.3d at 1032)).

Because Defendants carried their burden of making a prima facie showing that Plaintiff failed to comply with AR 850-04 § (IV)(B)(4)(a), the burden is on Plaintiff to provide admissible evidence that Arrowhead officials prevented, thwarted, or hindered his ability to comply with the regulation by denying him any way to make or obtain copies of his grievance forms. *See Anderson*, 277 U.S. at 248 (explaining that the burden shifts to the nonmovant after the summary judgment movant makes a prima facie showing); *Adickes*, 398 U.S. at 157 (stating that the nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence). Plaintiff has not carried his burden because he has not put forth *any* evidence that he was denied a way to make or obtain copies of his grievance forms. The conclusory assertions in Plaintiff's Response that he was not afforded any method of making copies is not competent summary judgment evidence. *Bones*, 366 F.3d at 875; *Hall*, 935 F.2d at 1111. The Court of Appeals for the Tenth Circuit has clearly explained that an inmate plaintiff must put forth some evidence that prison officials interfered with his ability to properly exhaust his administrative remedies

if he seeks to have his failure to exhaust excused. For example, in *Fields v. Oklahoma State Penitentiary*, the Court of Appeals stated as follows: "[Plaintiff] claims only that he was hampered in exhausting his remedies, and proving that he had exhausted, because he was denied access to and storage space for his legal materials. But he gives no specifics; bald allegations cannot preclude summary judgment." 511 F.3d at 1112; *see also Patel v. Fleming*, 415 F.3d 1105, 1110-11 (10th Cir. 2005) (rejecting an inmate plaintiff's argument that his failure to timely file grievances should be excused as he was "earnestly attempting to resolve his concerns informally" because the plaintiff did not put forth evidence demonstrating "*how* he was attempting to resolve his concerns informally" and "*why* those informal resolution attempts took an unusually long period" (emphasis added)). Moreover, Plaintiff has not offered any explanation as to how he was prevented from making copies of his grievance forms by hand. Accordingly, the Court finds that Plaintiff has not demonstrated that he was denied the ability to make or obtain copies such that it was impossible for him to comply with AR 850-04 § (IV)(B)(4)(a).

The Court concludes that Plaintiff failed to exhaust his administrative remedies before filing this action because he did not comply with AR 850-04 § (IV)(B)(4)(a). There is no genuine issue of material fact with regard to this issue. Accordingly, this case should be dismissed without prejudice. *See Dawson*, 2008 WL 1773866, at *1 n.1.

### IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants' **Motion for Summary Judgment** [#50] be **GRANTED**.

The Court FURTHER **RECOMMENDS** that Plaintiff's Amended Complaint [#18] be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: May 23, 2011

BY THE COURT:

s/ Kristen L. Mix
Kristen L. Mix
United States Magistrate Judge